IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0307-WJM-SKC

IPF SOURCING, LLC,

    Plaintiff,

v.

BOTANI-LABS, LLC,

    Defendant.

---

**ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD AND DENYING PETITION TO VACATE ARBITRATION AWARD**

---

Before the Court is Plaintiff IPF Sourcing, LLC's ("IPF") Petition to Confirm Arbitration Award ("Petition to Confirm"). (ECF No. 1.) Defendant Botani-Labs, LLC ("Botani") filed its Petition to Vacate the Arbitration Award ("Petition to Vacate"). (ECF No. 5.) IPF filed a response to the Petition to Vacate. (ECF No. 9.)

For the following reasons, the Court Grants IPF's Petition to Confirm and denies Botani's Petition to Vacate.

## I. BACKGROUND

IPF is a sourcing company that manufactures, sources, and fulfills various products for client-specific needs. (ECF No. 1 ¶ 1.) On or about April 28, 2020, IPF purchased over one million units of hand sanitizer from Botani for approximately $2,493,750 during the early stages of the COVID-19 pandemic ("Agreement"). (ECF No. 1-1.) The Agreement provided that the parties would settle any dispute arising out of the Agreement through arbitration and that it would be governed by Colorado law.

(ECF No. 1-1 ¶¶ 5–6.)  A dispute arose between the parties regarding Botani's failure to deliver the product.  (ECF No. 1 ¶ 7.)

Thus, on or about June 27, 2020, Botani filed a Demand for Arbitration with JAMS in its Denver, Colorado office.  (ECF No. 1 ¶ 8.)  Subsequently, IPF filed counterclaims in the arbitration proceeding, alleging breach of contract, breach of duty of good faith and fair dealing, and conversion against Botani.  (ECF No. 1 ¶ 8.)  On or about August 23, 2020, JAMS appointed the Honorable Norman Haglund ("Arbitrator") as arbitrator.  (ECF No. 1-2.)

According to IPF, the arbitration "quickly disintegrated into an attempt by Botani to delay the arbitration in an effort to conceal and facilitate Botani's diversion of the $2,493,750 to other entities that Rico Garcia [("Garcia")], Botani's principal, created in an effort to steal the funds."  (ECF No. 9 at 1.)  IPF describes Garcia and Botani's "delay tactics," which it states included

> Botani filing multiple requests with JAMS for the disqualification of the Arbitrator, Botani refusing to pay its share of the Arbitrator fees, Mr. Garcia refusing to disclose his address as required by JAMS rules, Botani producing falsified bank records during the course of the arbitration, Botani and Mr. Garcia submitting false interrogatory responses under oath, Botani retaining and then terminating multiple attorneys during the course of the arbitration, and Botani dissolving after all of the $2,493,750 was transferred to other entities formed and owned by Mr. Garcia.

(ECF No. 9 at 2.)

By contrast, Botani claims in its Petition to Vacate that the Arbitrator displayed "evident partiality against Botani, which resulted in a fundamentally unfair arbitration proceeding."  (ECF No. 5 at 1.)  Botani points to allegedly racist comments made by the Arbitrator at a hearing, specifically that Garcia, who is Latino, was "deceptive" and

2

"hiding on a tropical island somewhere." (ECF No. 5 at 4.) Additionally, Botani argues the Arbitrator made subsequent suggestions that Garcia "is unable to speak coherent English, conjuring discriminatory Latino tropes," highlighting an order in which the Arbitrator observed that Garcia's seven e-mails were "unnecessarily confusing and unintelligible" and disregarded those e-mails as a result. (ECF No. 5 at 13.) Botani contends that the Arbitrator's denial of its request to postpone the final hearing was based on his partiality and bias and resulted in fundamental unfairness. (ECF No. 5 at 13.)

**A.     Arbitration Events**

On December 21, 2020, January 5, 2021, and January 7, 2021, Botani's counsel—the second attorney to enter an appearance on behalf of Botani in the arbitration—moved to withdraw. (ECF No. 5 ¶ 8.) On January 7, 2021, the Arbitrator denied Botani's counsel permission to withdraw based on counsel's failure to comply with JAMS Rules and Colorado Rules of Civil Procedure. (ECF No. 5-7.) Thereafter, the Arbitrator permitted counsel to withdraw, and Garcia assumed the role of representative for Botani. (ECF No. 5-8.) In violation of JAMS Rules, Garcia did not provide his address or telephone number to the JAMS Case Manager, IPF, or its counsel. (ECF No. 9 at 2; ECF No. 5-23.) Later, Michael Faragalla became the third attorney to enter an appearance on Botani's behalf. (ECF No. 5-10; ECF No. 5-18 at 3 n.2.)

According to Botani, discovery was "contentious." (ECF No. 5 ¶ 11.) On June 11, 2021, the Arbitrator held a telephonic hearing regarding ongoing discovery disputes. (ECF No. 5 ¶ 11.) That same day, the Arbitrator issued an order compelling discovery from Botani by June 21, 2021, including the production of unredacted Botani bank

statements from the relevant time period and scheduled a telephone conference with the parties for July 9, 2021.  (ECF No. 5-11.)

Botani states that during the hearing, at which it was represented by Faragalla, "the Arbitrator demanded that Botani CEO Garcia submit an affidavit to JAMS stating his geographic location and expressed his belief that Garcia was 'deceptive' and 'hiding on a tropical island somewhere.'"  (ECF No. 5 ¶ 11.)  In the Petition to Vacate, Botani states that "Garcia is of Latino decent [*sic*] and viewed the Arbitrator's alleged comments as racially motivated and discriminatory."  (ECF No. 5 ¶ 11 (citing ECF Nos. 5-12–5-14).)

Current counsel for Botani states that to the best of her knowledge, there is no transcript of the June 11, 2021 hearing.  (ECF No. 5 ¶ 11 n.1.)  Further, the only evidence of the Arbitrator's alleged oral statements are documents prepared by Garcia and correspondence between Faragalla and Garcia, which are protected by attorney-client privilege.[1]  (ECF No. 5 ¶ 11 n.1.)

On June 11, 2021, Garcia e-mailed JAMS concerning the allegedly racist statements.  The body of the e-mail states:

> It has came to out [*sic*] attention the Arbiter made blatantly racist comments given my Caribbean Latino ancestry.  Namely that I am deceptive and hiding on a tropical island somewhere.  What he said is akin to saying an African American litigant is hiding in the jungle.  We demand a manager contact is immediately to discuss this very serious issue.  We did not pay to have some old racist white man as an Arbiter.  This Arbiter lacks the impartiality JAMS advertised and needs to be removed.  Otherwise we will seek legal remedy against JAMs.  Please provide a list of Hispanic arbiters.

---

[1] Botani did not submit the correspondence between Faragalla and Garcia with its Petition to Vacate.

4

(ECF No. 5-12.)  IPF points out that the e-mail was sent by Garcia, not Faragalla, and did not specify where or when such comments were allegedly made by the Arbitrator. (ECF No. 9 at 3.)

IPF states that Botani did not produce the unredacted bank statement by June 21, 2021, as ordered by the Arbitrator.  (ECF No. 9 at 3.)  Therefore, on June 30, 2021, the Arbitrator granted IPF a subpoena for Botani's bank statements directly from JP MorganChase.  (ECF No. 9-3.)

On June 22, 2021, Garcia e-mailed JAMS, Faragalla, and another individual named Haba Elsadek and stated that Faragalla was not authorized to communicate any further with JAMS on Botani's behalf until JAMS resolved his motion to disqualify the Arbitrator and that Botani would no longer pay JAMS for the Arbitrator's services because the Arbitrator was racist. (ECF No. 9-1.)

On June 28, 2021, Faragalla moved to withdraw as counsel for Botani.  (ECF No. 9-2.)

On July 1, 2021, JAMS postponed the July 9, 2021 phone conference until the motion to disqualify was resolved.[2]  (ECF No. 9-1 at 2.)

On July 9, 2021, Garcia e-mailed JAMS regarding Faragalla's Motion to Withdraw and advised JAMS that Botani had been dissolved and "there was no one to pay Faragalla's fees."  (ECF No. 9-11.)  In fact, IPF states that Garcia had dissolved Botani on June 8, 2021, after he depleted all of Botani's funds, including the funds

---

[2] It is unclear whether a formal motion to disqualify was filed by counsel for Botani at this point.  It appears as though the motion to disqualify that the JAMS representative refers to in her e-mail is the request to remove the Arbitrator contained in Garcia's June 22, 2021 e-mail to JAMS, Faragalla, and Elsadek.  (ECF No. 9-1.)

5

provided to Botani by IPF.  (ECF No. 9 at 5; ECF No. 9-12.)

On July 21, 2021, JAMS issued a letter to the parties finding that there was "no evidence of racism or arbitrator bias and no indication the arbitrator cannot continue to adjudicate this matter fairly and impartially."  (ECF No. 5-16.)  Having resolved Botani's motion to disqualify, JAMS reset the telephone hearing for August 13, 2021.  (ECF No. 9 at 5.)  The Arbitrator instructed Garcia to attend the hearing.  (ECF No. 5 ¶ 14.)

The day of the hearing, Garcia e-mailed JAMS another motion to disqualify the Arbitrator, arguing he was biased against Botani.  (ECF No. 5-13.)  The hearing nonetheless took place.  (ECF No. 5 ¶ 15.)  Garcia did not attend the August 13, 2021 hearing (ECF No. 5 ¶ 15), though Faragalla did (ECF No. 5-18 at 3).

On August 13, 2021, Faragalla e-mailed JAMS and the parties, advising that he did not file the motion to disqualify and that it was a fraudulent filing, not signed by him.[3]  (ECF No. 9-14.)

Following the hearing, on August 19, 2021, the Arbitrator issued Order No. 11, in which he concluded that since April 1, 2021, Botani was properly represented by two valid representatives, an attorney and a non-attorney.  (ECF No. 5-18 at 4.)  However, the Arbitrator stated that it was clear that Botani, through Garcia, terminated Faragalla's representation in the arbitration and that the Arbitrator ascribed no further responsibility to Faragalla going forward.  (ECF No. 5-18 at 6.)

Following a lengthy discussion of Botani's conduct in response to the Arbitrator's

---

[3] In the Petition to Vacate, Botani states that "confusion subsequently arose regarding whether Botani's counsel signed and filed the Motion to Disqualify."  (ECF No. 5 at 5 n.2.)  The Court finds that this description of events borders on disingenuous, as IPF and Botani have provided evidence that Faragalla disavowed the documents sent by Garcia in his name.  (*See, e.g.*, ECF No. 5-18 at 5–6, ECF No. 9-14.)

order compelling Botani to disclose financial documents, the Arbitrator dismissed Botani's claims against IPF as a sanction for its "deliberate" refusal to comply with the Arbitrator's June 11, 2021 order regarding certain discovery obligations. (ECF No. 5 ¶ 17; ECF No. 5-18 at 8.)

In that same Order, the Arbitrator also stated:

> Mr. Garcia, on behalf of Claimant Botani, has filed seven short e-mails with JAMS on the above dates [August 14, 16, 17, 2021]. Collectively they allege some sort of misconduct by IPF's counsel Mr. Bonello with respect to the subpoena duces tecum I issued at IPF's request on June 30, 2021. *However, I find the seven e-mails[4] unnecessarily confusing and unintelligible, particularly as to what factual information supports them, and what relief Botani is seeking.* It is not the Arbitrator's function to piece together disorganized filings or to conclude, possibly mistakenly, what the party is contending or seeking. I therefore ORDER that Botani restate, in the form of a single motion document with its exhibits, what it is that Botani wishes to bring to the Arbitrator's attention and what relief it seeks. In the meantime, I will disregard the 7 filings on the above dates, and ORDER that Respondent IPF or its counsel need not respond to those filings, until and unless they are restated in a coherent form. Upon a proper restated filing, IPF may respond within 14 days.

(ECF No. 5-18 ¶ 18 (emphasis added).)

On October 7, 2021, Botani's new attorney, Johanna Sheehe (counsel for Botani in the instant action), filed an amended notice of limited appearance and also moved to continue the final hearing set for October 13 and 14, 2021. (ECF No. 5-26 at 2.) On October 11, 2021, the Arbitrator denied the motion to continue, reciting in the order a lengthy procedural history of the arbitration and explaining the reasons for which he would not continue the final hearing. (ECF No. 5-26 at 2–5.)

---

[4] IPF attaches some of the e-mails as an exhibit to its response. (ECF No. 9-17.)

7

On October 13, 2021, Garcia sent JAMS another e-mail requesting the disqualification of the Arbitrator, arguing he was biased. (ECF No. 5-14; ECF No. 5-27; ECF No. 9-15.) That same day, Samuel Gordon, the JAMS Denver Office Manager, sent Garcia an e-mail, again denying Garcia's request to disqualify the Arbitrator. (ECF No. 9-16.) Gordon explained that Garcia's statements "are again a repetition of [his] previous motions to disqualify and are therefore denied." (ECF No. 9-16.)

An arbitration hearing on the counterclaim merits was held on October 13, 2021 via Zoom with the Arbitrator presiding from Colorado. (ECF No. 1 ¶ 12.) The Arbitrator issued a Final Order and Award on November 13, 2021, and both parties were e-mailed the Final Order and Award on November 16, 2021. (ECF No. 1 ¶ 13; ECF No. 1-3.)

On December 2, 2021, JAMS issued a letter to all parties in response to an e-mail Garcia sent on November 23, 2021, requesting that the Arbitrator be removed. (ECF No. 5-17.) That letter explained Garcia had filed numerous requests to remove the Arbitrator and that JAMS had reviewed his requests and "allegations of arbitrator bias, including racism, and the committee denied the motion and found no evidence of bias." (ECF No. 9-17 at 2.) The letter also mentioned that the committee had found no new grounds alleged that demonstrated evidence of arbitrator bias in subsequent requests by Garcia.

IPF and Botani both filed motions to correct the Final Order and Award. (ECF No. 1-4.) Based upon the motions to correct the Final Order and Award, the Arbitrator issued a Corrected Final Order and Award on December 3, 2021, which the parties received via e-mail the same day.[5] (ECF No. 1-5.)

---

[5] The corrections were typographical and involved correcting the use of commas and periods in the number "1,000,000" throughout the Final Order and Award. (ECF No. 1-5.) The

8

### B. Order and Award

In the Final Order and Award and Corrected Final Order and Award, the Arbitrator found in favor of IPF on its breach of contract counterclaim and awarded IPF $2,493,750 plus prejudgment interest from and after June 25, 2020 at a rate of 8% per annum, compounded annually until the Final Order and Award is reduced to judgment. (ECF No. 1-3 ¶¶ 44, 59A.)  The Arbitrator found in favor of IPF on its conversion counterclaim and awarded IPF $2,493,750 plus prejudgment interest from and after May 29, 2020 at a rate of 8% per annum, compounded annually until the Final Order and Award is reduced to judgment.  (ECF No. 1-3 ¶¶ 45, 59B.)  The Arbitrator also awarded IPF $1 million in exemplary damages, plus interest at a rate of 8% per annum compounded annually from the Date of the Final Order and Award, November 13, 2021, until the Final Order and Award is reduced to judgment.  (ECF No. 1-3 ¶¶ 58, 59B; ECF No. 1-5 ¶¶ 5a-b.)  In addition, the Arbitrator awarded IPF $46,372 in arbitration and arbitrator expenses plus prejudgment interest from and after the Date of the Final Order and Award, November 13, 2021.  (ECF No. 1-3 ¶¶ 47, 59C.)  Finally, the Arbitrator awarded IPF $87.59 in costs plus prejudgment interest from and after the Date of the Final Order and Award, November 13, 2021.  (ECF No. 1-3 ¶¶ 51, 59D.)

### C. Parties' Requests

To date, IPF has not received any payments in connection with the arbitration awards.  (ECF No. 1 ¶ 21.)  In its Petition to Confirm, IPF requests that the Court confirm in their entirety the Final Order and Award issued on November 13, 2021 and the Corrected Final Order and Award issued on December 3, 2021; direct judgment to

---

Court need discuss the differences in the Final Order and Award and the Corrected Final Order and Award no further.

be entered thereon for: (i) $2,493,750 in direct damages plus prejudgment interest of 8% from May 29, 2020 and (ii) $1,046,459.59 in exemplary damages, arbitration expenses, and costs plus prejudgment interest of 8% from November 13, 2021; award attorneys' fees in this proceeding; and post-judgment interest. (ECF No. 1 at 5.)

In the Petition to Vacate, Botani requests that the Court vacate the award because the Arbitrator demonstrated "evident partiality" throughout the proceedings. (ECF No. 5 at 10 (citing 9 U.S.C. § 10(a)(2), Colo. Rev. Stat. 13-22-223(1)(b)(i)).) Botani argues that the Arbitrator's bias is shown through his alleged racially charged comments concerning Garcia and his refusal to postpone the final evidentiary hearing. (*Id.*) In sum, Botani contends that the Arbitrator's bias so infected the proceeding that fundamental unfairness resulted, requiring vacatur of the award. (*Id.*)

## II. LEGAL STANDARD

The standard of review of arbitral awards is among the narrowest in the law. *See Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275, 276 (10th Cir. 1989); *see also Int'l Bhd. of Elec. Workers, Local Union No. 611, AFL-CIO v. Pub. Serv. Co. of N.M.*, 980 F.2d 616, 618 (10th Cir. 1992). "A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary; confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act." *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986). "Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citations omitted).

A court will enforce an arbitral decision if it draws its essence from the parties' agreements and is not merely the arbitration panel's own brand of industrial justice. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Courts may not reconsider the merits of an award even where the award may rest on errors of fact or misinterpretations of the parties' agreement. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *Cal-Circuit ABCO, Inc. v. Solbourne Comput., Inc.*, 848 F. Supp. 1506, 1510 (D. Colo. 1994). As a result, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38.

### III. ANALYSIS

**A.     Alleged Comments**

Statutorily, a district court may only vacate an arbitral award when there was "evident partiality or corruption in the arbitors." 9 U.S.C. § 10(a)(2). "Arbitrators are, of course, obligated to disclose possible bias." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982) (citing *Sanko S.S. Co. Ltd. v. Cook Indus., Inc.*, 495 F.2d 1260 (2d Cir. 1973)). "However, it is only clear evidence of impropriety which justifies the denial of summary confirmation of an arbitration award." *Id.* (citing *Nat'l Bulk Carriers v. Princess Mgmt.*, 597 F.2d 819 (2d Cir. 1979)). "For an award to be set aside, the evidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Id.* (citing *Tamari v. Bache Halsey Stuart, Inc.*, 619 F.2d 1196 (7th Cir. 1980), *cert. denied*, 449 U.S. 873).

Botani argues that it has "established direct evidence of bias and partiality by the

Arbitrator sufficient to vacate the Award." (ECF No. 5 at 13.) Based on the parties' Petitions and voluminous evidence submitted, the Court disagrees. Despite its contentions, Botani has not presented evidence of racial bias by the Arbitrator. Garcia's e-mail to JAMS contains unsupported allegations of allegedly racist statements. (ECF No. 5-12.) Even in his e-mail, Garcia does not state that he directly heard the Arbitrator make the statements. How could he, when he was not there? Rather, he states that it has "come to ou[r] attention" that the statements were made. (*Id.*) Further, Botani fails to present an affidavit from anyone ascribing particular statements to the Arbitrator that could be interpreted as evidence of racial bias.

The Court agrees that "Botani's tactic of quoting language in its Petition to Vacate from an exhibit that at best is double hearsay is simply not a justifiable basis to conclude that the Arbitration Award was based upon any bias." (ECF No. 9 at 7 (citing ECF No. 5 ¶¶ 11, 13).) In the Petition to Vacate, Botani acknowledges that there is no transcript of the June 11, 2021 hearing where the statements were allegedly made. (ECF No. 5 ¶11 n.1.) Further, Botani did not submit the purportedly privileged correspondence between Faragalla and Garcia. (*See* ECF No. 5 ¶11 n.1.)

The Court reaches the same conclusion regarding Botani's characterization of the Arbitrator's description of Garcia's e-mails as "unnecessarily confusing and unintelligible" as racist. (ECF No. 5-18 at 7.) The Court finds the Arbitrator's description of Garcia's e-mails is not in any manner racist. Rather, when read in context, the Arbitrator's statements do not reflect any bias, but are instead an attempt to efficiently manage the arbitration process in a difficult and contentious case.

In Part I.A, the Court quoted the portion of JAMS Order No. 11 that Botani

selectively quotes. As IPF clarifies, Botani fails to contextualize the Arbitrator's words and does not explain that over the course of three days in August 2021, Garcia had sent no fewer than seven e-mails to JAMS. (ECF No. 5-18 at 8.) These e-mails include a variety of accusations by Garcia, including, but not limited to, fraudulently issued subpoenas, alleged federal crimes, requests to disqualify IPF's counsel, ethical violations by IPF, and collusion between JAMS and the Arbitrator. (ECF No. 9 at 8; ECF No. 9-17.)

Rather than exhibiting racial bias, the Arbitrator's words provide an explanation as to why he "disregard[ed] the 7 filings" and provided Botani another opportunity to state "what it is that Botani wishes to bring to the Arbitrator's attention and what relief it seeks." (ECF No. 5-18 at 8–9.) When viewed in context (and even when viewed out of context), the Arbitrator's actions do not come close to establishing any bias, racial or otherwise, on his part against Botani. Indeed, what the record reveals is an Arbitrator who exhibited extraordinary patience, as well as fastidious impartiality and judicial decorum. The Court concludes that Botani's contentions on this point are utterly meritless and as a consequence are rejected.

## B. Decision Not to Postpone Hearing

Pursuant to § 10(a)(3), an award may be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown." Nonetheless, "[b]ecause the primary purpose for the federal policy of favoring arbitration is to promote the expeditious resolution of disputes, a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited." *Goldgroup Res., Inc. v. DynaResource De Mexico, S.A. De C.V.*, 381 F. Supp. 3d 1332, 1356–57 (D. Colo. 2019), *aff'd*, 994 F.3d 1181 (10th Cir. 2021) (quoting *ARW Expl. Corp. v. Aguirre*, 45

13

F.3d 1455, 1463 (10th Cir. 1995)).

The Tenth Circuit has interpreted § 10 to mean that parties are entitled to a fundamentally fair arbitration proceeding. *Id.* (citing *Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1012–13 (10th Cir. 1994)). A fundamentally fair hearing requires notice and an "opportunity to be heard and to present relevant and material evidence and argument before the decision makers." *Id.* (quoting *Bowles*, 22 F.3d at 1013). Courts should be reluctant to interfere with an award under § 10(a)(3) where "there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement." *Id.* (quoting *Fairchild & Co. v. Richmond, F. & P. R. Co.*, 516 F. Supp. 1305, 1313–14 (D.D.C. 1981) (quoted with approval in *Aguirre*, 45 F.3d at 1464)).

In its Petition to Vacate, Botani states that "less than ten days before the hearing, the Arbitrator permitted Botani's counsel to withdraw." (ECF No. 5 ¶ 41.) However, the evidence submitted shows that Garcia had terminated Faragalla as Botani's counsel by at least June 22, 2021. (ECF No. 9-1 at 1 ("Faragalla, You're not authorized to communicate any further with JAMS on [Botani's] behalf.").) Later, in an August 10, 2021 e-mail to Faragalla that was copied to JAMS and IPF's counsel, Garcia wrote to Faragalla, "We will file an ethics complaint if you continue to interfere in this case in any manner. Your firm has been terminated and does not represent BL . . . ." (ECF No. 9-18 at 2.)

Moreover, the Arbitrator's August 19, 2021 Order No. 11 acknowledged that Botani had announced in its August 10, 2021 e-mail that "Faragalla had been discharged as Botani's attorney in this matter[.]" (ECF No. 5-18 at 3.) The Arbitrator went on to state that regardless of Faragalla's pending motion to withdraw as Botani's

14

counsel, "Botani continued to be properly represented in accordance with JAMS rules by Mr. Rico Garcia." (ECF No. 5-18 at 3.) The Arbitrator stated, "I do not look to [Faragalla] for any further responsibility to represent Botani on an ongoing basis" and "Botani will not be unrepresented, as Mr. Garcia remains responsible for Botani's further compliance under the JAMS Rules and Colorado law." (ECF No. 5-18 at 5–6.)

Thus, as early as August 2021, Botani had notice that the Arbitrator had found that Garcia had terminated Faragalla's and his firm's representation of Botani in the arbitration and that the Arbitrator directed Botani not to consider Faragalla its attorney of record. (ECF No. 5-18 at 5–6.) As IPF argues, Botani had ample time to engage new counsel but chose to wait until a few days before the final evidentiary hearing when Botani's proposed new counsel filed an Amended Notice of Limited Appearance on October 7, 2021 and sought a continuance of the final evidentiary hearing for a minimum of at least 60 days. (ECF No. 5-25.)

In JAMS Order No. 17, the Arbitrator denied Botani's request for postponement in a well-reasoned, lengthy analysis. (ECF No. 5-26.) While the Court will not reiterate the contents of that order, the Arbitrator recounts Botani's having at least three different prior law firms, Garcia's and Botani's discovery obstructions, Botani's repeated requests for disqualification of the Arbitrator, Botani's failure to pay its share of the Arbitrator expenses, Botani's failure to comply with pre-hearing obligations, and Garcia's termination of his e-mail address that was used as the sole contact point for Botani. (ECF No. 5-26.) Given the context in which the Arbitrator denied Botani's request to postpone the final hearing, the Court concludes that an extremely "reasonable basis" for the Arbitrator's decision to deny Botani's request for a postponement existed in this

case.

C.  **Exemplary Damages**

Finally, Botani also contends that the Arbitrator's "desire to punish Botani came to fruition when he issued the Award which included exemplary damages in the amount of $1,000,000." (ECF No. 5 at 16.)  The Court has reviewed the Arbitrator's well-reasoned Final Order and Award, in which he thoroughly explained the applicable authority guiding his decision to award significant exemplary damages.  (ECF No. 5-28 at 18–20.)  The Arbitrator explained the factual basis for the exemplary damage award of $1 million, including his finding that "Botani's actions, through Garcia, were in fact attended by circumstances of fraud, malice, and wanton conduct."  (ECF No. 5-28 at 20.)  In fact, the Arbitrator's exemplary damages award was well below that which IPF requested: $2,493,750, roughly the amount of is successful award for conversion.  The Court concludes that the Arbitrator demonstrated no "desire to punish Botani" in issuing the exemplary damages award.

D.  **Attorneys' Fees and Post-judgment Interest**

The decision to award attorneys' fees in an action to enforce an arbitral award is within the district court's discretion.  *United Steel Workers of Am. v. Ideal Cement Co.*, 762 F.2d 837, 843 (10th Cir. 1985).  Whether to award attorneys' fees remains discretionary at the enforcement level even where a provision in a contract provides for an award of costs and fees to a prevailing party at the arbitral level.  *See Curtiss Simmons Capital Res., Inc. v. Edward Kraemer & Sons, Inc.*, 23 F. App'x 924, 931 (10th Cir. 2001) (holding that district court did not abuse its discretion in denying costs and fees incurred in confirming arbitral award in spite of contract providing for costs and fees to prevailing party).  A prevailing party may recover attorneys' fees where the opposing

16

party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fabricut, Inc. v. Tulsa Gen. Drivers, Warehousemen & Helpers, Local 523*, 597 F.2d 227, 230 (10th Cir. 1979) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)) (upholding denial of attorney's fees in arbitration award confirmation action where district court found no bad faith).

IPF requests its reasonable attorneys' fees incurred in this proceeding, though it does not explain the basis for this request or provide any argument or authority in support.  (ECF No. 1 at 1.)  IPF also requests post-judgment interest but provides no legal support for this request either.  (ECF No. 1 at 1.)  "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.'" *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir.1992) (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990)).

In the Final Order and Award, the Arbitrator observed that IPF requested its attorneys' fees and costs in the arbitration, though the parties' written agreement contained no provision for allowing an award of attorneys' fees to the prevailing party in a dispute.  (ECF No. 5-28 at 17.)  The Arbitrator cited Colorado law which "precludes the award of attorney fees to a prevailing litigant absent contractual, statutory, or procedural rule providing otherwise."  (ECF No. 5-28 at 17 (citing *City of Wheat Ridge v. Cerveny*, 913 P.2d 1110, 1114 (Colo. 1996).)  Ultimately, the Arbitrator concluded that "the facts and the applicable law do not permit such relief."  (ECF No. 5-18 at 17.)

Given the Arbitrator's findings in the Final Order and Award, combined with IPF's failure to provide the Court with support for its requests, the Court, in its discretion,

declines to award IPF its attorneys' fees or post-judgment interest in this matter. However, Federal Rule of Civil Procedure 54(d) provides that costs, other than attorneys' fees, should be awarded to a prevailing party, and 28 U.S.C. § 1920 provides that such an award is to be made upon the filing of a bill of costs. Fed. R. Civ. P. 54(d); 28 U.S.C. § 1920. IPF is therefore entitled to costs reasonably expended in this action.

## IV. CONCLUSION

For the reasons explained above, the Court ORDERS that:

1. IPF's Petition to Confirm Arbitration Award (ECF No. 1) is GRANTED;

2. Botani's Petition to Vacate the Arbitration Award (ECF No. 5) is DENIED;

3. The Arbitrator's Final Order and Award and Corrected Final Order and Award are CONFIRMED;

4. The Clerk shall enter judgment in favor of IPF and against Botani for: (i) $2,493,750 in direct damages plus prejudgment interest of 8% from May 29, 2020 and (ii) $1,046,459.59 in exemplary damages, arbitration expenses, and costs plus prejudgment interest of 8% from November 13, 2021;

5. IPF shall be awarded its costs incurred in this action upon the filing of a bill of costs, in accordance with the procedures under Federal Rule of Civil Procedure 54(d) and District of Colorado Local Civil Rule 54.1; and

6. The Clerk shall terminate this action.

Dated this 13th day of September, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge